## Case No. 294.

### AMERICAN COTTON-TIE SUPPLY CO. v. BULLARD et al.

[17 Blatchf. 160;[1] 4 Ban. & A. 520; 17 O. G. 389; 9 Reporter, 70.]

Circuit Court, S. D. New York. Sept. 29, 1879.

PATENTS FOR INVENTIONS—INFRINGEMENT—LICENSE "TO USE ONCE ONLY."

The plaintiff was the owner of patents covering improvements in metallic cotton ties, consisting of buckles and hoops, for compressing bales of cotton. Neither the plaintiff nor any prior owner of the patents had granted any licenses to make buckles or ties, but they had made and sold the ties. The buckles were stamped, "Licensed to use once only," and were sold with invoices declaring that the ties were licensed to be used once only, as baling ties. The defendant bought the buckles so once used, from cotton mills and junk dealers, and put up some with new hoops, and some with pieces of the original hoops pieced together, and sold them as cotton ties: Held, that the defendant had infringed the patents, and ought to be enjoined from further infringement.

[See American Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52; Id., Case No. 293.]

[In equity. Bill to restrain the infringement of patents Nos. 23.291, and 31,252.[2] Preliminary injunction granted.]

S. A. Duncan and J. R. Beckwith, for plaintiff.

C. C. Beaman, Jr. and B. F. Thurston, for defendants.

BLATCHFORD, Circuit Judge. The bill in this case sets forth that the plaintiff is "a joint stock company, duly and legally organized under the laws of the state of Louisiana, and having its principal place of business in New Orleans, in said state." It does not aver that the plaintiff is a corporation or that it is a citizen of the state of Louisiana. It avers that the defendants are citizens of the state of New York. The plaintiff is referred to in some of the affidavits as a corporation, and it is, doubtless, a corporation created by the state of Louisiana. This being so, the bill can be amended, and it must be, to show a capacity in the plaintiff to sue.

The bill is founded on re-issued letters patent No. 5,333, granted to James J. McComb, March 25th, 1873, for an "improvement in cotton bale ties," (the original patent having been granted to George Brodie, March 22d, 1859, and re-issued to him April 27th, 1869. and extended for seven years from March 22d, 1873,) and on letters patent No. 31,252, granted to J. J. McComb, January 29th, 1861, for an "improvement in iron ties for cotton bales," and extended for seven years from January 29th, 1875. The plaintiff is the owner of both of the patents.

The specification of No. 5,333, (called the Brodie patent,) sets forth that the invention is one of "improvements in cotton ties, or metallic bands and their connections, for baling." It says: "My invention relates to the combination with open slot ties of metallic bands having their ends free and held in position by the expansion of the bale. * * * Fig. 6 is a top view of the open slotted link, shown in Figs. 7, 13 and 14. * * * Figs. 6, 7, 13 and 14 show an open slotted link or tie. In Fig. 7 this is shown in connection with pins, and in Figs. 13, 14 and 15 in connection with the band alone, the ends being turned under the link and held in position by the pressure exerted by the expansion of the bale. In the latter mode of use, the slack may be readily taken up by forming the loop in the iron at the moment of making the fastening, and passing the end thus looped through the opening in the side of the link. The band is thus slipped sidewise through the opening into the slot, instead of thrusting it through endwise." The 3d, 4th and 5th claims of the patent are as follows: "3. The combination of an open slot for introducing the band sidewise, with a link having a single rectangular opening for holding both ends of a metallic band. and the band. 4. An open slotted link, when combined with metallic bands, the ends of which are turned under the link and held in position by the expansion of the bale. 5. The method of baling cotton with metallic bands, and of taking up the slack of the band, by bending the same at any desired point into the form of a loop, and passing such loop sidewise, through an open slit, into the slot intended to receive it, and over the bar of the clasp intended to hold it."

The specification of No. 31,252, (called the McComb patent,) sets forth that the invention is "a new and improved mode of fastening iron hoops on cotton bales." It says: "The nature of my invention consists in the use of a peculiarly shaped buckle, as a fastening or tie for the ends of the iron hoops which it is desired to substitute in place of the hemp ropes now made use of in baling cotton, said iron hoops being so much safer in case of fire. * * * The tie or buckle is a piece of wrought iron or other metallic substance, about the eighth of an inch thick. an inch and three-quarters wide, and two inches long, (the size being modified to suit the width of the hoop used,) with an oblong hole or aperture cut or punched through the centre. The diagram No.

[1][Reported by Hon. Samuel Blatchford. Circuit Judge, and here reprinted by permission.]
[2][See note at end of case.]

1FED.CAS.—40

1, lettered A, B, C, D. represents the exact size of one of the ties or buckles, with aperture cut to receive a hoop an inch wide. The sides A, B, and D, C, are equal and parallel, as are also the sides B, C, and A, D. The letters M, I, J, K, L, shows the shape of the aperture or hole which is punched or cut through the centre of the plate, the two longer sides, M, I, and K, L, being equal in length to the width of the hoop of the size above mentioned. In the side A, D, is cut a slot, which is indicated on the diagram by the letters E, F, and G, H, the side G, H, of the slot being turned outward the eighth of an inch, to facilitate the insertion of the end of the hoop." The buckle is of this shape:

The hoop and buckle are arranged as follows in use:

The claim is as follows: "Forming a link or tie with an oblong aperture, one end of which is arrow shaped, or, rather, presents two sides of an equilateral triangle, the design of this arrow shaped end being not only to force the hoop, or bend of the hoop, over the slot, which it does with unerring precision when the bale expands, after being released from the press, but also to secure an equal bearing upon the separated parts of the slotted side of the tie."

A patent was granted to Frederick Cook, March 2d, 1858, for an "improvement in metallic ties for cotton bales." This patent was extended for seven years from March 2d, 1872. As extended, it was assigned by Cook to James J. McComb, March 21st, 1872. In June, 1874, McComb assigned the Cook patent and the Brodie patent to a firm called "The American Cotton-Tie Company." In March, 1876, that firm assigned those patents to "The American Cotton-Tie Company, Limited," a corporation, and at the same time that corporation acquired the title to the McComb patent. From that corporation the title to the three patents passed to the plaintiff. Neither McComb, nor any of the subsequent owners of the patents, granted any licenses thereunder to make buckles or ties, but they retained to themselves the monopoly of manufacture, and made the ties and supplied the market with them, to an extent always equal to any demand. The tie mainly sold since March, 1872, by them, has been the "arrow tie" of the McComb patent. The bands have been cut to the length of eleven feet, bent over upon themselves once, and put up in bundles of thirty each, the buckles being strung upon one of the inner bands.

The defendants have used upon the cotton ties, which they have put up or sold, second-hand buckles, which they have bought from cotton mills and from junk dealers, and which were made and disposed of by the plaintiff, or its predecessors, under the Brodie and McComb patents. These buckles have had stamped upon them the words: "Licensed to use once only," and were formerly put upon the market by the plaintiff, or its predecessors, in the usual course of their business, with the following words printed on the bill-heads or invoices which went to the first transferee of the ties: "The cotton ties included in this invoice are licensed to be used once only, as baling ties, and are sold and purchased subject to this restriction," or the words: "Each bundle of cotton ties charged in this invoice consists of 30 bands. The buckles accompanying these bands are the property of The American Cotton-Tie Supply Company, (or, American Cotton-Tie Company, Limited,) and are licensed to be used once only, the company reserving the right, after such use, to recover possession of them wherever found." The first of the above forms of bill-head was used during the years 1873, 1874 and 1875, and the other

one during the years 1876 to 1879 inclusive, except that, for a portion of the latter four years, such bill-head used the words, "for one season," in lieu of the word "once."

In this country, cotton is usually sold without tare, that is, the purchaser pays a certain price per pound upon the aggregate weight of the bale, which is made up of the bagging, the ties (bands and buckles) and the material which they confine. In England, cotton is sold with tare, that is, the weight of the ties and bagging is deducted from the aggregate weight of the bale, and the purchaser pays so much per pound for the cotton, net weight, but takes the ties and the bagging with the cotton which they confine.

The ties which the defendants have sold embody the principles of construction which are found in the inventions covered by the 3d, 4th, and 5th claims of the Brodie patent, and in the invention covered by the McComb patent. The defendants' ties, as sold, consist of bands eleven feet in length, put up in bundles, each band accompanied by a buckle. In regard to some of such ties, the buckles being second-hand buckles, the bands are entirely new. In regard to others, the buckles being secondhand buckles, the bands are not, as whole bands, the original bands, bought at second hand, but consist of pieces of such original bands pieced together to make the proper length.

The question presented for consideration is, whether, on the foregoing facts, the defendants may lawfully sell such ties, consisting of such bands and such buckles. This question has been before the courts. In August, 1876, the American Cotton-Tie Company, Limited, and others, brought a suit in equity, against one Chapman, in the circuit court of the United States for the district of Louisiana, on the Cook, the Brodie and the McComb patents. The defendant had procured second-hand buckles lawfully put into use on cotton bales, under said patents, and had put new bands with them, and sold the combination as ties. It appeared, in that case, that, at the cotton presses at New Orleans, when the bales bound with the plaintiff's ties, consisting of the bands and buckles, were ready to be compressed, the bands and buckles were stripped off from the bales, and thrown on one side in a pile promiscuously with others, and that, when the bales were in the press, they were fastened together by the first ties that might be reached by the pressman out of the pile, no care being taken to use the same ties upon the bale, when compressed, which were so taken off from it. The facts, before mentioned, were before the court, as to the sale of cotton in this country without tare, and as to the stamp on the buckles, and as to the contents of the original bill-heads. The buckle used by Chapman was that of the McComb patent. The case came before Judge Billings, the district judge, on a motion for a preliminary injunction, and he granted the injunction, in No-

vember, 1876, after hearing counsel for both parties, and after the defendants' answer and a replication thereto were filed. The decision of the court is embodied in the order for the injunction.[3] It sets forth, that the Cook and the McComb patents secure the exclusive right to a cotton tie buckle having an open slot or slit, into which a flat iron band can be inserted sideways, known commonly as the open-slot buckle, and that the third and fourth claims of the Brodie patent secure the exclusive right to an open-slot buckle in combination with a flat band of iron, to be combined for and used as a tie for baling cotton or other compressible and elastic material; that the defendant had made and sold to be used a combination of a flat band of iron in combination with an open-slot buckle; that he had so combined and sold both the open-slot buckle in the exact similitude of the invention secured to the plaintiffs, as well as said open-slotted buckle combined with a flat band of iron, without any license, except such as was averred to have resulted from an alleged sale of said buckles by the American Cotton-Tie Company, Limited, to other persons than the defendant, whereby it was insisted by the defendant that he acquired the right, by purchase from said third persons, to combine said buckles with flat bands of iron, and sell the same; that the plaintiffs, in the protection of their rights, did not dispose of said buckles in full property, but with a condition that the same should only be used once for the purpose of baling cotton or other compressible material, and that the said condition was known to the defendant, it being stamped, in a permanent manner, on said buckles; that the contract by which said cotton ties and buckles were disposed of for use by the American Cotton-Tie Company, Limited, contained the same condition and stipulation as was stamped on said buckles; that said license to use said open-slot buckles, and a combination of the same with a flat band of iron, as a cotton tie, had, on the terms on which it was granted by the American Cotton-Tie Company, Limited, expired and been expended before the same came into the possession of the defendant; and that the sale of the open-slot cotton tie, known in the trade as the arrow tie, and the sale of the said open-slot buckles, in combination with a flat band of iron, to be used as a tie for baling cotton, or other compressible and elastic materials, was a substantial invasion and infringement of the right secured by said patents. It then proceeded to enjoin the defendant from using or selling for use any open-slot cotton tie buckle of the kind commonly known as the arrow tie, described and secured by any of said patents, upon the pretence that the same had, at any former time, been sold by the American Cotton-Tie Com-

---

[3][Nowhere reported; opinion not now accessible.]

pany, Limited, or its agents, and been once used for the purpose of baling cotton or other material before coming into the possession of the defendant, and from combining any such open-slot cotton tie buckles with a flat band of iron, to be used, or vended to others to be used, as a tie for baling cotton or other elastic or compressible material.

In January, 1877, the American Cotton-Tie Company, Limited, and others, brought a suit in equity against Grover, Stubbs & Co., in the circuit court of the United States for the southern district of Georgia,[4] on the same three patents. The defendants set up that they had never made any ties, but had sold ties made by the American Cotton-Tie Company, Limited. The ties they had sold were arrow ties. The facts of the stamps on the buckles, and of the contents of the bill-heads, before mentioned, were before the court. The ties were spliced. The case came before Judge Woods, the circuit judge, on a motion for a preliminary injunction, and he granted it, after hearing counsel for both parties. The order enjoined the defendants from selling ties known as the arrow tie, unless said ties should be purchased directly or indirectly from the plaintiffs, or their duly authorized licensees, or their vendees, or vendees of vendees, and from selling ties stamped with the words, "licensed to be used once only," or words of similar import, after said ties had been used once. .

In January, 1877, the American Cotton-Tie Company, Limited, and others, brought a suit in equity against A. C. Wyly and others, in the circuit court of the United States for the northern district of Georgia,[4] on the same three patents. The defendants set up that they had bought and sold metallic cotton ties known as piece ties, made by taking ties that had been once used in baling cotton, and afterwards cut from the bales, and rejoining the several parts with rivets, retaining the same buckles. The buckles were arrow buckles. The facts as to the stamps on the buckles, and the contents of the bill-heads, before mentioned, were before the court. Judge Erskine, the district judge, in March, 1877, granted a preliminary injunction, in the same terms as in the said suit against Chapman. .

In January, 1877, the American Cotton-Tie Company, Limited, and others, brought a suit in equity against C. W. Simmons & Co., in the circuit court of the United States for the southern district of Georgia,[4] on the same three patents. The defendants had sold second-hand arrow buckles with pieced bands. The facts as to the stamps on the buckles and the contents of the bill-heads, before mentioned, were before the court. Judge Erskine, the district judge, in April, 1877, granted a preliminary injunction, after hearing counsel for both parties, restraining the

defendants from making, using, or vending to others to be used, buckles for iron ties for cotton bales, known in the market as arrow buckles, or ties formed by the combination of an iron band with an open-slot buckle or arrow buckle, except the same should be purchased from or licensed by the plaintiffs, their assignees or their vendees or licensees.

In October, 1876, the American Cotton-Tie Company, Limited, and others, brought a suit in equity against Simeon W. Simmons and others, in the circuit court of the United States for the district of Rhode Island, on the same three patents. There was an answer and a replication, and the case was heard, at final hearing, on pleadings and proofs, by the circuit judge, Judge Shepley. The defendants had procured from cotton mills second-hand buckles and second-hand hoops, which had been once used on cotton bales. The hoops were not of the original length, but were in cut pieces, and the defendants pieced them together, by riveting, to the proper length. The buckles and hoops had been put upon the market by the American Cotton-Tie Company, Limited, under the three patents in question. There was evidence as to the stamping of the buckles and as to the contents of the bill-heads, before mentioned. In June, 1878, Judge Shepley gave a decision dismissing the bill, 13 O. G. 967, [American Cotton-Tie Co. v. Simmons, Case No. 293.] He said: "The complainants contend that they sold the buckles under a restriction, which limited them to one use, and did not convey an unrestricted title, and that the buckles never passed out of the monopoly of the patent. * * * The company clearly had the right, in selling a patented article, to put a restriction on its use or sale, and to convey only a restricted title, or to license only a restricted use, and the purchaser under such a restricted title could not convey a greater or better title than he had himself. The law upon this subject was fully stated in Hawley v. Mitchell, [Case No. 6,250,] and affirmed by the supreme court of the United States, 16 Wall. [83 U. S.] 544. But, when the proprietor of a patented article sells it for the purpose of allowing it to be used in the ordinary pursuits of life, and to pass into the markets of the country as an ordinary article of commerce, and subject to unrestricted purchase and sale, he waives his right to affix conditions or restrictions to its use or sale, and consents that, after one sale and the payment of one royalty, it shall pass out of the limits of the monopoly. If a manufacturer of patented pins, or nails, or wood screws, or any similar article, were to affix to his invoice of sale a condition limiting them to one use, and sell them in quantities to retail dealers to be sold again, he must know and intend that they are to pass into the commerce of the country, and to be sold over and over again, and sold only to persons who would not buy anything

---

[4][Nowhere reported; opinion not now accessible.]

less than an unrestricted title. Shall the purchaser of a packing box be treated as an infringer, and as pirating an invention, because he uses again, and for another purpose, the screws or nails which held the box together, and which he purchased when he purchased the box and its contents? May he not reasonably presume, with regard to articles of this description, that pins, and nails, and screws do not go into the market with an incumbrance upon their title, or a restriction on their use, and that he is not bound to trace the title, to see if it be unrestricted, for the reason, that he may well suppose no one would expect to affix a restriction on the use of such articles, which would be operative, or, if he could do so, would ever find purchasers of them? The buckles sold by the complainants belong to this class of articles. They are sold for the purpose of being used to confine a bale of cotton, as a nail or screw confines a packing box. It appears in evidence, that, when a bale of cotton is sold, it is without tare, and, consequently, the buckle and the strap it confines are sold and resold with the bale of cotton to which they are attached. If the cotton takes fire, or is otherwise damaged, and requires to be rebaled, must the owner put the same buckle back on the same bale or be liable to the penalties of an infringer? When the cotton bales are opened for use at the factories, the manufacturer who has purchased the ties and buckles with the cotton, having no further use for them, sells them to the junk dealer. From the junk dealer the defendants purchase them and repair them and sell them again. The vendor of the patented buckles sells them to be applied to the bales of cotton, with the full knowledge that they will be sold and resold as often as the cotton is sold. They impliedly consent to these unrestricted sales. They cannot, under such circumstances, be fairly considered as retaining the title to the buckles in themselves, or as parting with only such a restricted title as would require each vendor of the cotton to sell it accompanied with a restriction on the title and use of the buckles. The very purpose of the original sale, with the knowledge of the subsequent use and sales necessarily incident, imply a parting with the unrestricted title and a passing out of the limits of the monopoly, of the thing sold, as much as it would if the vendor sold patented nails or screws, to be used in fastening packing cases to be sold with the goods packed. The facts in this case show that the owners of the patented buckle intended and contemplated that the purchasers should sell an unrestricted title, inconsistent with any reservation of title or use in the original vendors. Such a sale does not fall within the principle stated in Hawley v. Mitchell. [Case No. 6,250,] but clearly falls within the language and principle of the decisions in Goodyear v. Beverly Rubber Co., [Id. 5,-557,] and Washing-Mach. Co. v. Earle, [Id. 17,219.] The case is very different from that of the sale of a machine easily identified, and to which a restriction may easily be attached, or where a license to use only may be sold, unaccompanied with any title or accompanied with a restricted title. But, where pins, nails, screws, or buckles are sold, if some of them are sold with a restricted and some with an unrestricted title, there are no means of identification which enable the purchaser, after they have passed into the market and common use, to distinguish the articles licensed or restricted in their use from those absolutely sold. In the case of articles of that description, the patentee may fairly be presumed to have received his royalty when he parted with the possession of the articles and allowed them to go into common and general use. The public should not be vexed with litigation about reserved rights or conditions affixed to the title of such articles, or put upon the investigation of incumbrances or restrictions on the title of nails, screws, buckles, or pins, before they can be safely used by a person who has bought them of parties who obtained them of the patentee, with the right to sell them in the open market. It is more for the interest of inventors that they should obtain their royalty on such articles when they first put them upon the market, than to make the monopoly odious by the attempt to fix restrictions on the subsequent use." The proceedings in the four cases above mentioned, in which injunctions were granted, were put in evidence in the case before Judge Shepley.

In a like suit in equity, by the same plaintiffs, against Williams, Black & Williams, in the circuit court of the United States for the district of South Carolina, in which the main issues were like those in the suit before Judge Shepley, the circuit judge, Judge Bond, followed the decision of Judge Shepley.

In view of these decisions, the question involved in this case may fairly be considered an open one, on authority as well as on principle. It is manifest, that the owners of the patents intended, by the stamps on the buckles and the imprints on the billheads, to grant a restricted license for the use of the ties and the buckles, and that the intended restriction was to a use of them once only, as baling ties. The words "licensed to use once only," stamped on each buckle, was notice to every one who handled it that there was attached to it a restriction in the shape of a license, and of a license merely to use, and of a license to use only once. This was a lawful restriction. The only question is, whether it was an effective and operative one, or whether it was strangled in its birth by the circumstances which attended the original putting of the ties and

buckles on the market, or whether, being created, it was waived by the voluntary action of the owners of the patents.

The defendants do not deny that the owner of a chattel may dispose of the same with restrictions upon the title, and they concede that the owner of a patented article has a right to put a restriction on its use or sale, both as to the extent of the territory within which it can be used and as to a period of use within the term of the patent. But they contend that a restriction thus imposed may be waived by the party who has imposed it, and that such waiver may be the legal result of acts, and be, in fact, contrary to the purpose and intention which the party has in his mind. They further contend, that, notwithstanding any restriction imposed in this case, the planter sold the cotton, and the ties and buckles which bound it into bales, without any restriction, and that the same fact existed with respect to every succeeding sale of the bales, down to the consumer; that the plaintiff permitted the planter to sell the cotton baled with the patented ties which he had purchased by the pound or the bundle, and to pass the property in such ties from purchaser to purchaser in succession, without any restriction; and that all such unrestricted sales were made, by implication of law, with the authority and by the direction of the owners of the patents, and were not the illegal acts of persons having possession of the property without title to it, because such sales were contemplated by the plaintiff as a part of the business of providing the market with ties. They liken the case to that of the license of a machine with a restricted right under a patent, and a subsequent acquiescence by the licensor in the sale of the machine by the licensee in derogation of the restriction. They insist, that, as the original vendors of the ties knew and intended that the cotton, with its bagging, bands and buckles, would and should be sold, and pass from purchaser to purchaser, without restriction, and that the bands and buckles would and should be treated as and become the property of the several purchasers in succession, by either a purchase at a price per pound, or by being given to the purchaser as a perquisite, the price being included in the price of the cotton, each successive purchaser of the baled cotton became the owner of the buckles and bands, and that any owner of the buckles has a right to put them a second time to the use contemplated in the Brodie patent, if they have once paid a patent royalty.

It is difficult to see how, in view of the facts of the case, the owners of these patents can properly be said to have sold the buckles for the purpose of allowing them to be used in the ordinary pursuits of life and to pass into the markets of the country as an ordinary article of commerce. They put them forth with a restriction imposed on them, that they should be used "once only" as baling ties. The good sense of the words "once only" is, that they shall be used to confine the bale until it is opened for use by the consumer and until the cotton has thus ceased to need longer confinement in a bale. A fair and liberal construction, consistent with the necessary intention of the owners of the patents, permits, in the business of pressing, a buckle and a band to be transferred from one bale which is on its way from the planter to the consumer to another bale which is on its way from the planter to the consumer, and does not require that such use should be regarded as a use more than once of the buckle and the band. The original license is fairly a license to have the buckle and the band confine a bale until the consumer needs to confine the bale no longer, and a license for no longer time. There is no purchase of buckle and band by a purchaser of the baled cotton, except as he purchases them confining the cotton and to confine it till it reaches the consumer, and such purchase of buckle and band is, in effect, only a purchase of them subject to such original license. It is quite as reasonable to say that the purchaser of the cotton buys subject to such license as it is to say that the licensor, having imposed the restricted license, permits it to be instantly destroyed. The former view is consistent with the original intention, and the latter view is inconsistent with it. The fact, that, in this country the cotton, the bagging, the iron band and the buckle, which compose the bale, are weighed as a whole and paid for at so much a pound for each pound of the whole weight, cannot have the effect to change the fact that the purchaser buys subject to a restricted license to use the band and the buckle only to confine the cotton which he is buying. What he pays for other than the cotton or the bagging is paid for subject to such license, the price being computed in the particular way agreed upon.

The foregoing views apply to the use a second time of original buckles, by themselves, or to the use a second time of the original buckles and the original bands. But the use of a buckle without a band will not confine a bale of cotton, and, although the defendants use a second time the original buckles, they do not use a second time the original bands in the condition in which those bands were originally put forth with such buckles. The defendants use entirely new bands or bands made by piecing together pieces of the old bands. In doing this they infringe the 3d, 4th and 5th claims of the Brodie patent. When they combine the old buckle with the new band they make anew the combination. They do the same when they combine it with a

pieced band. Piecing together the pieces of the old bands, after such bands have been voluntarily severed by the consumer of the cotton, is not a repair of the tie in any sense in which the right of repair attaches to the license. If a band were broken in transit, in an intermediate hand, the right of repairing it might exist. The defendants participate in combining the open-slot, the link and the band, as in the 3d claim of the Brodie patent, and in making the combination set forth in the 4th claim of that patent, and in practising the method set forth in the 5th claim of that patent, when they sell ties having the features set forth in those claims, and capable of the use described in those claims, and needing only the bale of cotton and the application of the tie to it to make the combinations set forth in those claims, and to produce the results there set forth by the means there set forth.

The question presented is one entirely of law. There is no disputed question of fact. There is nothing to be elucidated by testimony. The right of the plaintiff is regarded as clear. The validity of the patents and the identity of the defendant's articles with those of the patents is not disputed. There is as much ground, on the question of comity, for following the decisions of Judge Woods, Judge Billings and Judge Erskine, as for following those of Judge Shepley and Judge Bond, and, the question for decision in all the cases being one of law, on undisputed facts, a decision of it on a motion for a preliminary injunction is of equal weight, on a question of comity, as a decision of it on a final hearing.

The preliminary injunction asked for is granted, to be issued after the bill shall have been properly amended, as before suggested.

[NOTE. Patent No. 23.291 was granted March 22, 1859, to G. Brodie, and reissued March 25, 1873. It has been the subject of judicial construction in the following cases: American Cotton-Tie Co. v. Simmons, 106 U. S. 89, 1 Sup. Ct. 52; Id., Case No. 293; Same v. McCready, Id. 295. Patent No. 31,252 was granted January 29, 1861. to J. J. McComb. and was also involved in each of the above cases.]